IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| DAWON HUGHES, | |
| Petitioner, | CIVIL ACTION NO.: 2:25-cv-17 |
| v. | |
| WARDEN, FCI JESUP-CAMP, | |
| Respondent. | |

### REPORT AND RECOMMENDATION

Petitioner Dawon Hughes ("Hughes"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus.  Doc. 1.  Respondent filed a Motion to Dismiss, and Hughes filed a Response.  Docs. 6, 8.  For the following reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DISMISS without prejudice** Hughes's Petition based on his failure to exhaust available remedies, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Hughes *in forma pauperis* status on appeal.

### BACKGROUND

Hughes was convicted in the District Court for the District of Nebraska of conspiracy to distribute and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846, and was sentenced to 139 months in prison.  Doc. 6-1 at 7.  Hughes has a statutory release date of November 14, 2027, via good conduct release, and a projected release date of November 14, 2026, via First Step Act ("FSA") release.  Id.  Hughes also has a home detention or residential reentry center eligibility date of May 14, 2026.  Id.

In his Petition, Hughes asserts that the Bureau of Prisons ("BOP") has not properly credited his sentence under the FSA, resulting in his continued custody. Doc. 1 at 4. Hughes also asserts that his release date under the Second Chance Act was July 5, 2024. Id. at 12. Hughes asks the Court to apply his earned FSA credits and set him for placement in a residential re-entry program and to have the BOP re-apply his Second Chance Act credits.[1] Id. at 14–15.

Respondent asks this Court to dismiss Hughes's Petition because Hughes failed to exhaust his administrative remedies regarding the claims he raises in this Petition. Doc. 6 at 3–6. In addition, Respondent contends that the Court lacks jurisdiction under the Administrative Procedures Act to review Hughes's FSA claim and Hughes cannot challenge his placement via § 2241. Id. at 6–12.

## DISCUSSION

**I.     Hughes Did Not Exhaust His Available Administrative Remedies Before Filing His Petition**

Respondent asserts that Hughes states that using the administrative remedies process would be futile and, thus, he should be excused from this requirement. Id. at 5 (citing Doc. 1 at 12). Respondent argues that a futility exception does not apply. Because Hughes has not exhausted his administrative remedies, Respondent asserts Hughes's Petition should be dismissed. Id. at 6.

Hughes recognizes that he was required to exhaust all administrative remedies before filing suit in federal court. Doc. 1 at 12. However, Hughes states exhaustion would be futile because his presumptive release date has passed, and he would not have access to the procedure

---

[1] Respondent submitted documents in support of his Motion to Dismiss indicate Hughes was due to be transferred to a residential re-entry program on April 16, 2025. Doc. 6-1 at 3, 15, 18. If that is correct and Hughes has been transferred, his Petition is likely moot, as he has now received the relief he requested. This would provide another basis for dismissal.

once he is released.  Id.; Doc. 8 at 3.  Hughes also states he began the remedies process but "will not be able to complete [it]."  Doc. 1 at 12.

The Court addresses Respondent's assertion that Hughes did not exhaust his administrative remedies prior to filing his Petition and Hughes's assertion that exhaustion would be futile.

### A. Generally, a Petitioner Must Fully Exhaust All Available Administrative Remedies Before Filing a § 2241 Petition

The Eleventh Circuit Court of Appeals has held a § 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect.  Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional.").  Nevertheless, the Eleventh Circuit has noted "the exhaustion requirement [is] still a requirement and that courts cannot 'disregard a failure to exhaust . . . .'"  Fleming, 631 F. App'x at 842 (citing Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015)).

Exhaustion of administrative remedies must occur first in the agency setting to allow "the agency [to] develop the necessary factual background upon which decisions should be based" and to give "the agency a chance to discover and correct its own errors."  Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)).  Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of

prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[2]

The United States Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

The Eleventh Circuit has explained—though only in an unpublished opinion—that a § 2241 petitioner need only exhaust "available" administrative remedies. Blevins v. FCI Hazelton Warden, 819 F. App'x 853, 856 (11th Cir. 2020) (citing Ross v. Blake, 578 U.S. 632 (2016)). As a result, a petitioner need not exhaust administrative remedies:

> (1) where despite what regulations or guidance materials may promise, the administrative process operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates, (2) where the administrative process is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it, and (3) where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Id. (cleaned up); see also Parra-Orona v. Jenkins, No. 1:23-CV-2434, 2024 WL 6083897, at *2 (N.D. Ga. Jan. 16, 2024) (citing Blevins and evaluating the unavailability of administrative remedies in the § 2241 context), adopted by, 2024 WL 6083898 (N.D. Ga. Mar. 26, 2024); Ridling v. Yeager, No. 1:24-CV-01785, 2025 WL 1892707, at *3 (N.D. Ala. June 13, 2025) (same), adopted by, 2025 WL 1885636 (N.D. Ala. July 8, 2025).

---

[2] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

4

Although a petitioner must ordinarily exhaust administrative remedies before filing a § 2241 petition, there are some circumstances where exhaustion may be excused. In McCarthy v. Madigan, the Supreme Court recognized "three broad sets of circumstances" that may justify excusing a claimant from exhausting administrative remedies: (1) when "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action"; (2) when there is "some doubt as to whether the agency was empowered to grant effective relief"; and (3) when "the administrative body is shown to be biased or has otherwise predetermined the issue before it . . . ." 503 U.S. 140, 146–48 (1992) (internal quotation marks omitted), superseded by statute, 42 U.S.C. § 1997e(a). The Eleventh Circuit has not spoken directly on whether exhaustion can be excused in the § 2241 context under the three McCarthy circumstances, but in an unpublished opinion, has suggested it can be. See Shorter v. Warden, 803 F. App'x 332, 336 (11th Cir. 2020) (suggesting McCarthy should be applied to § 2241 petitions). District courts in this Circuit have similarly applied McCarthy in the § 2241 context. See, e.g., Wilson v. Sawyer, No. 4:20-CV-00326, 2020 WL 7346550, at *2 (N.D. Fla. Nov. 13, 2020), adopted by, 2020 WL 7342656 (N.D. Fla. Dec. 14, 2020); Robelo-Galo v. Janson, No. 1:24-CV-00931, 2025 WL 2093409, at *1 (N.D. Ga. Feb. 24, 2025), adopted by, 2025 WL 2093406 (N.D. Ga. Mar. 14, 2025).

There is some uncertainty about whether there is a "futility" exception to the exhaustion requirement for § 2241 petitioners. See Zapata-Molina v. Stone, No. CV 321-013, 2021 WL 2670725, at *2 (S.D. Ga. June 1, 2021) (noting it is unclear whether a futility exception exists in the § 2241 context), adopted by, 2021 WL 2673670 (S.D. Ga. June 29, 2021). McCarthy itself suggests that the second and third circumstances identified in that case encompass futility. See McCarthy, 503 U.S. at 148 (noting that where an agency is not empowered to grant effective

relief, seeking application for administrative relief may be "utterly futile" and that where a decisionmaker has already concluded rules were valid, seeking administrative remedies that would present same challenge to the same decisionmaker would be a "futile act"). Additionally, in Shorter, the Eleventh Circuit suggested that the petitioner's futility argument related to one of the three McCarthy circumstances. 803 F. App'x 336. District courts applying McCarthy have also recognized that the McCarthy circumstances case likely encompass some futility exception. See, e.g., Jones v. Zenk, 495 F. Supp. 2d 1289, 1299–1300 (N.D. Ga. 2007) ("[T]he exceptions recognized in McCarthy, including the futility exception, apply to the exhaustion requirement in § 2241 cases."); Robelo-Galo, 2025 WL 2093409, at *2.

Thus, to the extent a petitioner demonstrates futility by showing the existence of one of the three circumstances described in McCarthy, a court may excuse the exhaustion requirement. There does not, however, appear to be any separate, independent futility exception outside of the three McCarthy circumstances.³ Where a petitioner relies on futility, the petitioner has the burden to demonstrate futility and "extraordinary circumstances." Jaimes v. United States, 168 F. App'x 356, 359 & n.4 (11th Cir. 2006).

---

³ In McGee v. Warden, FDC Miami, the Eleventh Circuit expressly concluded that there is no futility exception to the exhaustion requirement for § 2241 petitions. 487 F. App'x 516, 518 (11th Cir. 2012). However, that conclusion was based on a view that exhaustion was a jurisdictional requirement, which was later rejected. Therefore, the conclusion about a futility requirement expressed in McGee is likely no longer correct. See Straughter v. Warden, FCC Coleman - Low, 699 F. Supp. 3d 1304, 1308 (M.D. Fla. 2023) (explaining that the conclusion in McGee likely did not survive Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015)).

Some courts have continued to state that there is no futility exception to the exhaustion requirement for § 2241 petitioners. See, e.g., Martinez-Palmero v. Jenkins, No. 1:23-CV-2763, 2023 WL 12119160, at *2 (N.D. Ga. Nov. 17, 2023), adopted by, 2024 WL 6081629 (N.D. Ga. Feb. 27, 2024); Moore v. Colon, No. 20-22032, 2020 WL 5868179, at *4 (S.D. Fla. July 27, 2020), adopted by, 2020 WL 5848687 (S.D. Fla. Sept. 30, 2020). However, that view appears to be largely based on the language in McGee, which, after Santiago-Lupo, is likely no longer binding.

### B.   Legal Framework for Evaluating a Motion to Dismiss for Failure to Exhaust Administrative Remedies

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because exhaustion "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

A respondent may raise an inmate-petitioner's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[respondents] bear the burden of proving that the [petitioner] failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

In Turner, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies.[4] 541 F.3d at 1082. First, courts "look[] to the factual allegations in the [respondent's] motion to dismiss and those in the [petitioner's] response, and if they conflict, takes the [petitioner's] version of the facts as true." Id.; see also

---

[4] Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner is no less applicable to a § 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting § 2241's exhaustion requirements and Turner's application of exhaustion standards to a § 2241 petition); Blevins v. FCI Hazelton Warden, 819 F. App'x at 856 (11th Cir. 2020) (applying Turner in the § 2241 context).

7

Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the Turner test assesses whether there is a genuine dispute of material fact regarding the [petitioner's] failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the [petitioner's] allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, [respondent has] shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Once respondents have shown an administrative remedies procedure exists and the petitioner did not follow the procedure, the petitioner "bears the burden of proving the . . . procedure effectively was unavailable to him." Nuckles v. Yeager, Case No. 1:25-cv-00125, 2025 WL 1490057, at *4 (N.D. Ala. May 22, 2025) (referencing Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020)).

Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court

may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record."). However, if the issue of exhaustion is "intertwined with the merits of a claim protected by the Seventh Amendment," parties are entitled to a jury trial on that issue and dismissal is not appropriate. Perttu v. Richards, 605 U.S. ___, 145 S. Ct. 1793, 1800 (2025).

      C.      **The BOP's Administrative Remedies Procedures**

The BOP has established an administrative remedy procedure through which an inmate may seek review of an issue related to any aspect of his imprisonment. 28 C.F.R. § 542.10 *et seq*. The Administrative Remedy Program applies to all inmates incarcerated in penal institutions the BOP operates. Id. § 542.10(b). Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff at the local facility ("BP-8"). Id. § 542.13(a). If this does not resolve the matter, an inmate must submit a formal written administrative remedy request to the Warden ("BP-9") within 20 calendar days of the incident giving rise to the administrative remedy request. Id. § 542.14(a). If unsatisfied with the Warden's response, an inmate may appeal with the Regional Director ("BP-10") within 20 days of the Warden's response. Id. § 542.15(a). If dissatisfied with the Regional Director's response, an inmate may take a final appeal ("BP-11") to the BOP's Central Office, Office of General Counsel in Washington, D.C., within 30 days of when the Regional Director signed the response. Id. Appeal to the BOP's Central Office is the final step in the BOP's administrative remedy process. Id. An inmate must complete all the steps in the administrative remedies process to have exhausted his administrative remedies. A submission at any of these levels can be rejected, with notice to the inmate why the submission

was rejected and, if correctable, to allow the inmate a reasonable time for re-submission. Id. § 542.17(b). Additionally, if an inmate does not receive a response within the allotted time for response at any level, including any extensions, the inmate is to consider the lack of a response to be a denial at that level. Id. § 542.18. The BOP uses a system known as "SENTRY to log and track inmate [remedies requests] as they progress through the administrative remedy process." Jackson v. Gabby, Case No. 3:23-cv-4674, 2024 WL 1515703, at *4 (N.D. Fla. Feb. 28, 2024).

### D. Analysis of Hughes's Efforts at Exhaustion

Respondent contends Hughes did not exhaust his administrative remedies before he filed this Petition. Doc. 6 at 5. Indeed, Hughes freely admits he did not exhaust his administrative remedies prior to filing his § 2241 Petition. Doc. 1 at 12; Doc. 8 at 3. Hughes notes he began the remedies process on January 12, 2025 (one day before he signed his Petition, doc. 1 at 18), but contends he "will not be able to complete" the process. Doc. 1 at 12. Respondent notes Hughes filed Administrative Remedy Number 1226232-F1 (BP-9-Warden level) in January 2025 and it was denied on January 27, 2025; Hughes did not appeal the denial to the BP-10 or BP-11 levels. Doc. 6 at 5. Thus, the parties' assertions do not create a genuine dispute as to Hughes's failure to exhaust his administrative remedies, and Hughes's Petition is due to be dismissed. Accepting Hughes's assertion as true, which the Court must, the only conclusion is that Hughes did not exhaust his administrative remedies before he filed his Petition.[5]

---

[5] In support of his Motion, Respondent submitted the declaration of David Nogle, the Case Management Coordinator at FCI Jesup, a printout of Hughes's SENTRY records, and a copy of the grievance Hughes filed and the Warden's response. Doc. 6-1 at 2–4, 20–26, 33–34. Mr. Nogle sets forth the BOP's administrative remedies procedure and notes that Hughes has failed to file any appeals relating to the claims he raises in this Petition. Id. at 2–3. The SENTRY printout for Hughes shows that he filed one administrative remedies request for proper accounting of FSA credits. Id. at 3. The Warden denied Hughes's remedy request at the BP-9 level, and Hughes did not appeal the denial of this request. Id. The submitted evidence demonstrates that a remedies process exists, and that Hughes began, but did not fully complete, the administrative remedies process for the claims he raises in his Petition.

Hughes, however, argues that requiring him to exhaust would be futile because he release date had already passed. Doc. 8 at 7. Hughes's argument is unconvincing. Hughes makes only a cursory futility argument. Id. Hughes does not show: (1) that requiring exhaustion would "occasion undue prejudice to subsequent assertion of a court action"; (2) that there is any about whether the BOP is "empowered to grant effective relief"; or (3) that the BOP is "biased or has otherwise predetermined the issue before it . . . ." See Shorter, 803 F. App'x at 336 (citing McCarthy, 503 U.S. at 146–48). Furthermore, Hughes has not shown that "extraordinary circumstances" support application of a futility exception in this case. Jaimes, 168 F. App'x at 359 & n.4.

Consequently, the Court should **GRANT** Respondent's Motion and **DISMISS without prejudice** Hughes's Petition based on his failure to exhaust his available administrative remedies prior to the filing of his § 2241 Petition. It is unnecessary to address the remaining grounds of Respondent's Motion. Holdago v. United States, Civil Action No.: 5:19-cv-9, 2019 WL 5681217, at *3 (S.D. Ga. Oct. 31, 2019) (finding it unnecessary to address alternative grounds in motion for dismissal where petitioner failed to exhaust his available administrative remedies), adopted by, 2019 WL 6353869 (S.D. Ga. Nov. 26, 2019).

## II.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Hughes leave to appeal *in forma pauperis*. Though Hughes has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context

must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of the filings in this case, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DISMISS without prejudice** Hughes's Petition based on his failure to exhaust available remedies, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Hughes *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't

Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 8th day of September, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA